IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYNGENTA CROP PROTECTION, LLC, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Civ. No. 16-mc-171-RGA |
| | ) |
| WILLOWOOD, LLC, WILLOWOOD | ) |
| USA, LLC, WILLOWOOD | ) |
| AZOXYSTROBIN, LLC, AND | ) |
| WILLOWOOD LIMITED, | ) |
| | |
| *Defendants*. | |

**MEMORANDUM**

Presently before the court is a motion by defendants Willowood, LLC, *et al.* to compel non-party Helena Chemical Company to produce certain documents requested in a subpoena *duces tecum*. (D.I. 1). Willowood brings this motion pursuant to Fed. R. Civ. P. 45 and 26.[1] (D.I. 1 ¶ 1). For the reasons stated below, Willowood's motion to compel is granted in part and denied in part. The court is ordering Helena to produce discovery but not the specific information Willowood requested in its subpoena. Also pending before the court is Helena's motion to strike a portion of the declaration Willowood submitted in support of its reply brief. (D.I. 9). Because the court did not rely on the information in the declaration to render its decision, this motion is moot.

---

[1] Fed. R. Civ. P. 45(d) allows a party subject to a subpoena to file a motion to quash or modify in the district court where compliance is required. Fed. R. Civ. P. 26(b) provides the general rules on the scope of discovery.

1

## I. BACKGROUND

Plaintiff Syngenta Crop Protection, LLC filed a complaint in United States District Court for the Middle District of North Carolina against Willowood for patent infringement, copyright infringement, and unfair and deceptive trade practices based on two of Willowood's fungicides containing the active ingredient azoxystrobin. (D.I. 4 at 2). That action is captioned *Syngenta Crop Protection LLC v. Willowood LLC, et al.*, Civ. No. 1:15-cv-274 (M.D.N.C.). Syngenta's complaint includes a claim for lost profits. Willowood believes that Syngenta's lost profits claim will be based on lost sales and price erosion caused by Willowood's market entrance in the summer of 2014. (D.I. 1 ¶ 3).

Helena sells azoxystrobin products, among other things, and has been selling these products for several years before Willowood entered the market. (*Id.*; D.I. 4 at 2). On May 13, 2016, Willowood served Helena with a subpoena requesting more than six years' worth of transaction-level financial data relating to all of Helena's sales of all of its products containing any amount of azoxystrobin. (D.I. 4 at 2). Specifically, the subpoena sought:

> For each sale of [Helena's] products containing azoxystrobin beginning January 1, 2010 until and including the present, documents sufficient to show:
> (1) the dates of sale;
> (2) the unit price at which the product was sold;
> (3) the volume or quantity of sales;
> (4) the identity of purchaser(s); and
> (5) the gross revenues and net revenues (which account for discounts, rebates, charge-backs and any other adjustments to list prices), received for all sales of products containing azoxystrobin.

(D.I. 1 ¶ 5).

Throughout May and June 2016, counsel for Willowood and Helena had several telephonic meet and confers regarding the scope of the subpoena. (D.I. 4 at 2). Willowood offered to reduce the time period from January 2010 to January 2012 and limit the identity of the purchasers to categories of customers (i.e., national distributors, regional distributors, independent retailers,

2

growers). (*Id.*; D.I. 7 at 1). Helena offered to produce sales volumes and average sales prices, for the period of June 2014 to the present, for its products having the same or similar azoxystrobin concentrations as Willowood's accused products. (D.I. 4 at 3). The parties, however, were unable to reach a compromise, resulting in the instant motion before this court.

In its reply brief, Willowood further refined its discovery request. Willowood now seeks:

> [F]or each sale of Helena's azoxystrobin products that are substantially similar to Willowood's products since January 1, 2012[, documents sufficient to show]:
> (1) The unit price;
> (2) The net unit price (i.e., the actual price paid after accounting for discounts, rebates and the like);
> (3) The volume sold; and
> (4) The category of customer (i.e., national distributor, regional distributor, independent retailer or grower).

(D.I. 7 at 1 (emphasis omitted)). Accordingly, Willowood no longer seeks information regarding any Helena product containing azoxystrobin, but only those products "that are substantially similar to Willowood's products." (*Id.*). In addition, Willowood has changed "gross revenues" and "net revenues" to "unit price" and "net unit price," which were undefined. (D.I. 1 ¶ 5; D.I. 7 at 1). It appears that unit price refers to the advertised price or list price, and net unit price is the amount the customer actually paid after any discounts. (*See* D.I. 1 ¶ 5; D.I. 7 at 6). Finally, Willowood no longer requests the dates of sale. (D.I. 1 ¶ 5; D.I. 7 at 1).

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 26(b) defines the scope of discovery for a subpoena issued pursuant to Fed. R. Civ. P. 45. *Verisign, Inc. v. XYZ.com, LLC*, 2015 WL 7960976, at *1 (D. Del. Dec. 4, 2015). Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Under the proportionality requirement, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

3

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information does not have to be admissible into evidence in order to be relevant. *Id.* "Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances." *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993).

Helena primarily argues that Willowood seeks discovery of information that constitutes trade secrets without providing adequate protection. Fed. R. Civ. P. 45(d)(3)(B) allows the court to "quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information." The court may, however, refrain from quashing the subpoena if the serving party "shows a substantial need for the ... material that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(C).

## III. DISCUSSION

"[T]rade secrets are not absolutely privileged from discovery in litigation." *Coca-Cola Bottling Co. of Shreveport, Inc. v. CocaCola Co.*, 107 F.R.D. 288, 292 (D. Del. 1985). In resisting the discovery of a trade secret, a party must first demonstrate that the information sought "is a trade secret and that disclosure of the secret might be harmful." *Id.* If this showing is made, the burden shifts to the party seeking discovery to show that "the disclosure of the trade secret is both relevant and necessary." *Id.* To satisfy the relevance requirement, the serving party "must show that the material sought is relevant to the subject matter of the lawsuit." *Id.* To satisfy the necessity requirement, the serving party must establish that the material "is reasonably necessary for a fair opportunity to develop and prepare the case for trial." *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987). After the serving party has shown relevance and need, the court must

4

"balance the need for the information against the harm that would be caused if disclosure is ordered." *Coca-Cola Bottling*, 107 F.R.D. at 293. The court must consider "not the injury that would be caused by public disclosure, but the injury that would result from disclosure under an appropriate protective order." *Id*. "Disclosure to a competitor is presumed more harmful than disclosure to a non-competitor." *Cash Today of Tex., Inc. v. Greenberg*, 2002 WL 31414138, at *2 (D. Del. Oct. 23, 2002).

### A. Trade Secrets

A trade secret is "information, including a formula, pattern, compilation, program, device, method, technique or process," that both "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and is subject to reasonable efforts "to maintain its secrecy." 6 *Del. C.* § 2001(4)(a)-(b).

Willowood does not seriously contest Helena's assertion that the information requested in the subpoena constitutes trade secrets. Helena has cited cases showing that the information has been protected as trade secrets. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1260 (3d Cir. 1985) (stating that data used in costing and pricing, including information regarding materials, labor, overhead, and profit margin, qualifies for trade secret protection); *Mattern & Assoc., L.L.C. v. Seidel*, 678 F.Supp.2d 256, 269 (D. Del. 2010) (stating that a customer list constitutes a trade secret); *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F.Supp.2d 74, 85 (D. Del. 2003) (noting that a customer list is "precisely the type of business information which is regularly accorded trade secret status").

Helena has also submitted undisputed evidence that it took precautions to prevent disclosure of the requested information. For example, Helena prices its products on a customer-

by-customer basis based on a number of factors and, as a result, information regarding its sales is not generally known to its customers, competitors, or the general public (other than what a specific customer might know about their own transactions). (D.I. 4 at 7). In addition, Helena requires employees with access to the sales information to execute confidentiality agreements as a condition of employment. (*Id.* at 8). Recognizing that the information as requested constitutes trade secrets, Willowood tried to circumvent the issue by narrowing its request in its reply brief. Accordingly, the court will now consider whether the discovery request as currently formulated is relevant and necessary.

### B. Relevance and Necessity

Willowood argues that information regarding Helena's sales of fungicides containing the active ingredient azoxystrobin is relevant to its defense against Syngenta's claim of lost sales and price erosion. (D.I. 1 ¶ 3). A lost profits claim based on price erosion essentially alleges that due to the low sales price by the infringer, the patentee was forced to lower its sales price to stay competitive. (D.I. 4 at 10). Willowood believes that Helena charges lower prices for its azoxystrobin products than Syngenta and, therefore, Helena is partially or wholly responsible for Syngenta's lost sales or price erosion. (D.I. 1 ¶ 4).

Willowood does not dispute Helena's assertion that lost sales can be proven by determining Syngenta's relative market share. (D.I. 4 at 8). This measure of damages assumes that, but for the infringing sales, the patentee would have made sales equal to the patentee's market share. *See Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-78 (Fed. Cir. 2003); *PBM Prod., LLC v. Mead Johnson Nutrition Co.*, 2010 WL 56072, at *6 (E.D. Va. Jan. 4, 2010) (stating that market share is a "recognized economic approach" to calculating lost profit damages). Market share is determined on a volume (or unit) basis, not on a dollar (or revenue) basis. *See, e.g., Mars, Inc. v. Conlux USA*

*Corp.*, 818 F. Supp. 707, 716 (D. Del.), *aff'd*, 16 F.3d 421 (Fed Cir. 1993) (explaining that market share calculations were based on units sold during infringement period); *Dor Yeshurim, Inc. v. A Torah Infertility Medium of Exch.*, 2011 WL 7285038, at *6 (E.D.N.Y. Aug. 10, 2011) (explaining that a lost profits claim can be supported by evidence regarding the "volume of business in the area"); *PBM Prod.*, 2010 WL 56072, at *6 (calculating market share by allocating "the volume of sales" to each market participant). Thus, the only information regarding other market participants, such as Helena, that may be necessary and relevant to calculating the patentee's lost sales is volume sold.

Willowood did not cite any authority contradicting Helena's assertion that price erosion can be based on annual sales figures. (D.I. 4 at 13). *See, e.g., Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 604 (D. Del. 1997) (concluding that the expert erred when he used "the average annual growth as opposed to the average annual sales increase" in making his estimate of lost profits damages); *Micro Motion, Inc. v. Exac Corp.*, 761 F. Supp. 1420, 1434 (N.D. Cal. 1991) (using "annual sales of products" to calculate patentee's price erosion damages). In addition, Willowood has presented no authority in support of its assertion that the identity of the purchasers or the categories of customer are relevant, let alone necessary, to a lost profits claim. Accordingly, it appears that the only information from Helena relevant and necessary to calculating price erosion is Helena's annual sales figures for azoxystrobin products that are substantially similar to Willowood's accused products.[2] Helena has not claimed that information

---

[2] The court assumes that Helena's annual sales figures will reflect the prices at which the products were actually sold. Willowood has not explained why it would also need unit price (or the list price) and the court can think of no reason to order its production. Accordingly, the court will not order production of Helena's "unit price."

7

related to its sales volume and annual sales figures should be subject to any greater protections than what is currently afforded by the protective order entered in underlying case.

Having identified the relevant and necessary information, the court must now resolve the parties' dispute regarding the relevant time frame. Willowood asserts that historical price information from January 2012 until the time it entered the market in 2014 will provide "a better understanding of the effect, if any, that Willowood's entry had on the market." (D.I. 1 ¶ 13). Helena admits that its "prices during (and perhaps shortly before) the period of Willowood's accused infringement are relevant." (D.I. 4 at 10).

The court has found authority stating that a patentee's sales in the pre-infringement period is relevant to calculating lost profits. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1359 (Fed. Cir. 2001) (collecting cases where pre-infringement prices were used to calculate price erosion); *Hilton v. Int'l Perfume Palace, Inc.*, 2013 WL 5676582, at *7 (E.D.N.Y. Oct. 17, 2013) (stating that plaintiffs should provide "sales and profits before and after defendants' breach" in order to quantify the amount of lost profits); *Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co.*, 630 F.Supp.2d 255, 262 (E.D.N.Y. Dec. 31, 2008) ("In order to determine lost profits based on declining revenue, a pre-infringement 'base line' must be established to predict what revenue plaintiff would have generated absent the infringement."); *C.R. Bard, Inc. v. Bos. Sci. Corp.*, 1998 WL 34181945, at *4 (D. Del. Nov. 30, 1998) (finding substantial evidence in the record to support the jury's conclusions when the expert's lost profits analysis took into consideration patentee's pre-infringement sales trend). These cases focus on the sales figures of the patentee and not a third-party like Helena. Nevertheless, they do give credence to Willowood's assertion that pre-

infringement sales information may be necessary and relevant to defending against Syngenta's lost profits claim.

Willowood claims that sales information for two years preceding its entry into the market would be most helpful to understanding trends in the pre-infringement market. (D.I. 7 at 5). Willowood entered the market in June 2014. Accordingly, the court holds that Helena should produce to Willowood, subject to a protective order, documents sufficient to show the annual sales volume (in units) and annual sales figures (in dollars) for Helena's azoxystrobin products that are substantially similar to Willowood's accused products beginning June 1, 2012 until and including June 1, 2016.

Helena has asked the court to exclude from its annual sales volume resales of products purchased from the parties. (D.I. 4 at 15-16). Helena suggests that Willowood could determine Helena's total volume by submitting a discovery request to Syngenta for the volume of product sold to Helena and then combining Syngenta's response with information from Helena and Willowood. (*Id.*). This seems unnecessarily complicated and risks inaccuracies. Moreover, Helena has not supported its claim that including resales of the parties' products in its annual volume creates an undue burden. Accordingly, the court denies Helena's request to exclude from its calculation of sales volume products purchased from the parties in the underlying action.

## IV. CONCLUSION

For the foregoing reasons, Willowood's motion to compel is granted in part and denied in part. (D.I. 1). Helena's motion to strike is moot. (D.I. 9). An appropriate order will be entered.

Dated: September 14, 2016

*/s/ Richard G. Andrews*
UNITED STATES DISTRICT JUDGE

9